UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

TONYA A. IRIZARRY,

                              Plaintiff,

              -vs-                                          05-CV-651C

MICHAEL J. ASTRUE,[1]
Commissioner of Social Security,

                              Defendant.

_____

_____
        Plaintiff Tonya Irizarry initiated this action pursuant to 42 U.S.C. §405(g) to review

the final determination of the Commissioner of Social Security ("Commissioner") denying

her application for Social Security disability ("SSDI") benefits.[2]  The Commissioner has filed

a motion for judgment on the pleadings (Item 6), and the plaintiff has cross-moved for the

same relief (Item 8), pursuant to Fed. R. Civ. P. 12(c).   For the following reasons, the

Commissioner's motion is denied, and plaintiff's cross-motion is granted.


## BACKGROUND

        Plaintiff was born on December 19, 1974 (T. 39).[3]  She applied for SSDI benefits

on July 1, 2002, alleging a disability onset date of February 13, 2001 (id.).  The application

was denied on January 21, 2003 (T. 30-34).  Plaintiff then requested an administrative

_____

        [1]  Michael J. Astrue became the Commissioner of Social Security on February 12, 2007 and is
thus substituted as defendant in this case.  See Fed. R. Civ. P. 25(d)(1); 42 U.S.C.  § 405(g).

        [2]  This case was transferred to the undersigned by order of the Hon. Richard J. Arcara dated
July 13, 2007 .

        [3]  References preceded by "T." are to page numbers of the transcript of the administrative record
filed by defendant as part of the answer to the complaint (Item 3).

hearing, which was held on May 14, 2004 before Administrative Law Judge ("ALJ") Donald T. McDougall and where she appeared with counsel (T. 203-49).  On July 19, 2004, the ALJ issued an unfavorable decision, finding that plaintiff was not disabled and not entitled to SSDI benefits (T. 11-20).  The ALJ's decision became the Commissioner's final determination when the Appeals Council denied  plaintiff's request for review on July 28, 2005 (T.  4-6).  On September 15, 2005, plaintiff instituted this action seeking judicial review of the Commissioner's final determination (Item 1).  The Commissioner filed an answer on December 15, 2005 (Item 3).  Thereafter, the Commissioner moved for judgment on the pleadings on May 11, 2006 (Item 6), and the plaintiff cross-moved for the same relief on May 31, 2006 (Item 8).

## DISCUSSION

### I.    Scope of Judicial Review

Under the Social Security Act, a person is entitled to Social Security disability benefits when he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A); *Melville v. Apfel*, 198 F.3d 45, 50 (2d Cir. 1999).  Such a "physical or mental impairment" must be demonstrable by medically acceptable clinical and laboratory diagnostic techniques.   42 U.S.C. § 423(d)(3). Determinations of disability are based on objective medical facts, diagnoses or medical opinions inferable from these facts, subjective complaints of pain or disability, and educational background, age, and work experience. *Mongeur v. Heckler*, 722 F.2d 1033,

1037 (2d Cir. 1983); *Fishburn v. Sullivan*, 802 F.Supp. 1018, 1023 (S.D.N.Y. 1992).

The Act states that upon district court review of the Commissioner's decision, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is defined as evidence which "'a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938)); *see also Tejada v. Apfel,* 167 F.3d 770, 773-74 (2d Cir. 1999). Under these standards, the scope of judicial review of the Commissioner's decision is limited, and the reviewing court may neither try the case *de novo* nor substitute its findings for those of the Commissioner. *Richardson,* 402 U.S. at 401. "The court's sole inquiry is 'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Winkelsas v. Apfel,* 2000 WL 575513, at *2 (W.D.N.Y. February 14, 2000) (quoting *Sample v. Schweiker,* 694 F.2d 639, 642 (2d Cir. 1982).

However, "[b]efore the insulation of the substantial evidence test comes into play, it must first be determined that the facts of a particular case have been evaluated in light of correct legal standards." *Gartmann v. Sec'y of Health and Human Servs.,* 633 F. Supp. 671, 680 (E.D.N.Y. 1986) (quoting *Klofta v. Mathews,* 418 F. Supp. 1139, 1141 (E.D.Wis. 1976). The Commissioner's determination cannot be upheld when it is based on an erroneous view of the law that improperly disregards highly probative evidence. *Tejada,* 167 F.3d at 773.

## II.     Standards for Determining Eligibility for Disability Benefits

The regulations set forth a five-step process for the ALJ to follow in evaluating disability claims.  *See* 20 C.F.R. §404.1520.  First the ALJ must determine whether the claimant is presently engaged in substantial gainful activity.  If the claimant is not, the ALJ must decide if the claimant has a "severe" impairment, which is an impairment or combination of impairments that "significantly limits [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. §404.1520(c).  If the claimant's impairment is severe, the ALJ then determines whether it meets or equals the criteria of an impairment found in 20 C.F.R. § 404, Subpart P, Appendix 1 (the "Listings").  If the impairment meets or equals a listed impairment, the claimant will be found to be disabled.  If the claimant does not have a listed impairment, the fourth step requires the ALJ to determine if, notwithstanding the impairment, the claimant is capable of performing his or her past relevant work.  If the claimant is not capable of performing the past relevant work, the fifth step requires that the ALJ determine whether the claimant is capable of performing other work which exists in the national economy, considering the claimant's age, education, past work experience, and residual functional capacity ("RFC"), based on a series of charts provided in the regulations at 20 C.F.R. § 404, Subpart P, Appendix 2 (the "Grids").  *See Curry v. Apfel,* 209 F.3d 117, 122 (2d Cir. 2000); *Reyes v. Massanari,* 2002 WL 856459, at *3 (S.D.N.Y. April 2, 2002).

The claimant bears the burden of proof with respect to the first four steps of the analysis.  If the claimant demonstrates an inability to perform past work, the burden shifts

to the Commissioner to show that there exists other work that the claimant can perform. *See Rosa v. Callahan,* 168 F.3d 72, 77 (2d Cir. 1999).

In this case, the ALJ determined that plaintiff had not engaged in substantial gainful employment activity since the date of her alleged disability onset (T. 15).  In reviewing plaintiff's medical records, the ALJ found that plaintiff suffers from vertebrogenic disorder which is "severe" for purposes of the regulations, but does not meet or equal the requirements of the Listings as it has not resulted in an inability to ambulate effectively (T. 15-16).  Proceeding to the fourth step of the sequential evaluation process, the ALJ found that plaintiff is capable of performing her previous relevant work as a data entry clerk and other light work (T. 19).  Additionally, the ALJ heard the testimony of a vocational expert ("VE") who stated that there were light jobs in the local and national economies that plaintiff could perform.  Accordingly, the ALJ concluded that plaintiff was not disabled for purposes of the Social Security Act at any time since the alleged onset of her disability.  *Id.*

The Commissioner contends that the ALJ's findings are supported by substantial evidence.  Plaintiff contends that the ALJ erred in failing to recontact her treating physician to complete an assessment of her RFC and in finding that she had the capacity to do light work.

## III.   The ALJ's Duty to Recontact Plaintiff's Treating Physician

Plaintiff contends that the ALJ was under a duty to recontact plaintiff's treating physician to obtain an assessment of her RFC.  The medical evidence indicates that plaintiff was involved in a motor vehicle accident on February 13, 2001.  She sustained facial injuries and a loss of consciousness.  Thereafter, she complained of severe back

pain, and an MRI of August 1, 2001 indicated disc herniation at L4-5 and L5-S1 with stenosis at L4-5. Plaintiff treated with Dr. Cameron B. Huckell, an orthorpedic surgeon. On April 12, 2002, Dr. Huckell performed lumbar fusion with complete laminectomy of L4-5 and L5-S1, including posterior arthrodesis from L4-S1, insertion of bone cage devices at L4-5 and L5-S1, insertion of nonsegmental instrumentation at L4-S1, and left iliac crest bone graft (T. 16, 89).

Plaintiff saw Dr. Huckell for follow-up care. In January 2003, she reported that she was three months' pregnant. She had noted overall improvement since the surgery, but experienced low back pain, throbbing in her feet, left leg pain, and occasional numbness in her left foot. As a result of the pregnancy, Dr. Huckell could not take x-rays to confirm that the spinal fusion was intact (T. 143). Following the birth of her daughter, plaintiff complained of worsening back pain and numbness in her legs and toes (T. 151). In March 2004, Dr. Huckell reported that the spinal fusion was solid, but that plaintiff had a reduced range of motion in her lower back of 50 percent (T. 150). Plaintiff also suffered from leg pain which Dr. Huckell opined was the result of scar tissue in the area of the fusion (*id.).* An MRI of May 24, 2004 showed slight posterior subluxation of the L4 vertebral body, granulation of tissue at L4-5 and L5-S1, and no appreciable stenosis (T. 196). At that time, Dr. Huckell recommended no further intervention other than to follow-up in a year or sooner (T. 150).

A consultative examination was performed by Dr. Steven Dina on January 10, 2003 (T. 133-35). Dr. Dina found a mild-to-moderate impairment for plaintiff's low back pain and lumbar disc dysfunction (T. 135). Plaintiff had a normal gait, could do a full squat, was able to rise from a chair, and was able get on and off the examining table (T. 134). Plaintiff had

6

45 degrees of forward lumbar flexion, no spasm or spinal tenderness, but showed no left ankle reflex (T. 134).  Dr. Dina assessed plaintiff's prognosis as "fair," and stated she would have restrictions for repetitive bending, squatting, lifting light to medium weights, and assuming fixed positions without the ability to change positions (T. 135).

The ALJ stated that despite Dr. Huckell's opinion on several occasions that plaintiff was temporarily totally disabled, the objective evidence did not support this conclusion (T. 18).  The ALJ noted the findings of Dr. Dina, which revealed no restrictions of plaintiff's functioning as to consider her disabled, and Dr. Huckell's findings that plaintiff retained "as much as 50 percent of her range of motion of the lumbar spine . . ." (*Id.).*  Additionally, the ALJ noted that Dr. Huckell did not provide "any specific restrictions or limitations that resulted from the claimant's back pain" (*Id*.).

Plaintiff contends that the ALJ should have sought out further information from Dr, Huckell, her treating physician.  The Commissioner argues that the ALJ was under no obligation to further develop the record, and that the report of Dr. Dina constitutes substantial evidence in support of the finding of no disability.

When the evidence received from the treating physician is inadequate to determine whether a claimant is disabled, the ALJ is obligated to recontact the treating physician in an attempt to obtain additional evidence or clarification.  *See* 20 C.F.R. § 404.1512(e).  An ALJ may not rely merely on the absence of evidence in reaching his decision "without making an affirmative effort to fill any gaps in the record . . . ."  *Garcia v. Barnhart*, 2003 WL 68040, *3 (S.D.N.Y. Jan. 7, 2003).  Rather, an ALJ confronted with an incomplete record must seek out additional information sua sponte, "even when the claimant is represented by counsel." *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) (citations and

internal quotation marks omitted); *see also Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998) ("[E]ven if the clinical findings were inadequate, it was the ALJ's duty to seek additional information from [the treating physician] *sua sponte*." ); *Rivas v. Barnhart*, 2005 WL 183139, at *23 (S.D.N.Y. Jan. 27, 2005) ("[A]n ALJ has an affirmative duty to seek amplification of an otherwise favorable treating physician report where the report is believed to be insufficiently explained or lacking in support."); *Volkerts v. Soc. Sec. Admin*., 2005 WL 2660433, at *2 (D.Conn. Sept. 29, 2003) ("[T]he ALJ must point to affirmative pieces of evidence, not simply the absence of evidence, to support his determination."); *Devora v. Barnhart*, 205 F. Supp. 2d 164, 172-73 (S.D.N.Y.2002) ("The duty of the ALJ to develop the record is particularly important when it comes to obtaining information from a claimant's treating physician.").   Here, although he opined on several occasions that plaintiff was "temporarily totally disabled," Dr. Huckell did not provide information as to her specific limitations and restrictions so as to assist the ALJ in formulating plaintiff's RFC. "The absence of an opinion about specific functions or limitations is a gap to be filled, not a reason to discredit or disregard [Dr. Huckell's] opinion." *Tornatore v. Barnhart*, 2006 WL 3714649, *3 (S.D.N.Y. Dec. 12, 2006).   Because the ALJ relied on omissions without seeking clarification or amplification of the record, he did not satisfy his obligations, and remand is necessary.

Additionally, the ALJ gave Dr. Huckell's opinion "little weight" without analyzing the treating physician's opinion consistent with the Regulations.   It is well settled that "[t]he opinion of a treating physician is given controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence." *Rosa*, 168 F.3d at 78-79; 20

8

C.F.R. § 404.1527(d)(2). Where an ALJ refuses to give controlling weight to a treating physician's medical opinion, the ALJ must consider various factors to determine how much weight to give to the opinion, including "(i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; [and] (iv) whether the opinion is from a specialist." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004); *see* 20 C.F.R. § 404.1527(d)(2). The regulations also require the Commissioner to provide "good reasons in [his] notice of determination or decision for the weight [he] give[s] [claimant's] treating source's opinion." 20 C.F.R. § 404.1527(d); *see also Halloran*, 362 F.3d at 33 ("We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physicians [sic] opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion."). This requirement facilitates court review of an ALJ's decision and allows claimants to understand better the disposition of their cases. *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999).

Here, although the ALJ gave an overview of Dr. Robert Huckell's findings and appears to have recognized the doctor as plaintiff's treating physician (T. 16-18), the ALJ did not acknowledge the treating physician "rule" or adequately explain how it applied to this case. It remains unclear whether, in determining precisely what weight to give Dr. Huckell's opinion, the ALJ considered such factors as "the frequency of examination," the "length, nature and extent of the treatment relationship," and the fact that Dr. Huckell is a specialist. 20 C.F.R. § 404.1527(d)(2). It cannot be said, therefore, that the ALJ has complied with the regulations and case law requiring him to "comprehensively set forth

reasons for the weight assigned" to Dr. Huckell's opinion.  *Halloran*, 362 F.3d at 33; see

20 C.F.R. § 404.1527(d)(2).

## IV.    Plaintiff's RFC

Plaintiff also argues that the ALJ erred in finding that she was capable of performing

light work.  Specifically, the ALJ found that plaintiff could do "light work with the ability to

change positions briefly (for a minute or two at a time) at least every ½ hour" with

restrictions for extreme heat and cold, ladders, ropes and scaffolds, stairs and ramps,

kneeling and crawling, occasional balancing, stooping or crouching, and the ability to miss

up to one work day per month (T. 18).  Consequently, the ALJ found that plaintiff could do

her previous relevant work as a data entry clerk, which is generally performed at a light or

sedentary level (T. 18-19).

"Light work" is defined as follows:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).  In contrast, "sedentary work" is defined as follows:

Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

10

20 C.F.R. § 404.1567(a).

The ALJ appears to have based his RFC assessment on the report of Dr. Dina. However, Dr. Dina found that plaintiff could not lift "light to medium weights" and could not assume "fixed positions without the ability to change positions" (T. 135). Dr. Dina did not conclude that plaintiff could lift and carry up to 10 pounds frequently and up to 20 pounds occasionally. Additionally, Dr. Dina did not find that plaintiff could perform a job that "requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls . . ." 20 C.F.R § 404.1567(b). The court thus finds that the ALJ's assessment of plaintiff's RFC for light work is not supported by substantial evidence.

Having found that plaintiff could do light work, and thus sedentary work as well, the ALJ concluded that plaintiff could return to her previous work as a data entry clerk, which was performed at a sedentary level. However, plaintiff's previous data entry position was combined with work as a shipping clerk, which was classified by the VE as light work (T. 238). Plaintiff's other past work, as a waitress and a packager, was classified as light (T. 238-39). If plaintiff is not capable of performing light work, she is not capable of performing any past relevant work.

Upon remand, the ALJ should properly assess plaintiff's RFC. If plaintiff is found to be capable of performing sedentary work, the VE testified that plaintiff could perform the sedentary jobs of surveillance monitor, information clerk, and data entry clerk. It is the Commissioner's burden at this stage of the sequential evaluation to show that positions exist in significant numbers in the economy.

**CONCLUSION**

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Item 6) is denied and plaintiff's cross-motion (Item 8) is granted.  The matter is remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

So ordered.

\s\ John T. Curtin
_____
JOHN T. CURTIN
United States District Judge

Dated:  September   25   , 2007
p:\opinions\05-651.sep1807

12